May it please the Court, Edward Wong, appearing for Petitioner, Michelle Nasubo. Counsel, I had a question on this. It looks to me as though the whole discussion of child abuse is irrelevant because his conviction is for willful endangerment of a child, which is a different offense. Why do we need to decide anything about child abuse? Your Honor, I wanted to update the Court. The count whereby the Petitioner pled guilty to cruelty to a child by endangering the health of a child has been dismissed. That count was withdrawn non-pro tempore as of December 20th of 2008. I mean, you went through a 1203.4 PC hearing? It was a hearing where the attorney that represented the Petitioner convinced the district attorney to allow the defendant to withdraw that plea, and another count was reinstated. He pled guilty to driving while having a measurable blood alcohol level. So it was turned from drunk driving and child endangerment to just plain drunk driving? Yes. Does that... I recall we have a line of cases saying that a subsequent non-pro tempore doesn't matter. I don't remember whether there are any in this context. Do you happen to know? Your Honor, there is a case before that was decided by this Court in Knapp v. Gonzales, 467 F. 3rd, 1185, where the Court, this Court stated that the Department of Homeland Security bears the burden of showing that an alien's conviction remains valid for immigration purposes when that particular charge has been withdrawn. I think the cases I'm remembering had to do with sentencing enhancements, that sort of thing, and it didn't matter. But I can't remember. I was under the impression that even a notice motion in which the DA agreed to dismiss this account was, for immigration purposes, still a conviction. In matter of pickering, that was the decision. However, subsequent to that, this Court had decided this case, Knapp v. Gonzales, decided... Knapps, M-A-T-Z? N-A-T-H. What was the year of that? 2006. 2006. Because I know... Was that cited in any of your briefs? That was not, Your Honor, because after the brief was filed, then the conviction was withdrawn. Because the definition of conviction in the INA was changed relatively recently to essentially say any determination by a judge or any – I don't remember the exact wording because I didn't know that this was going to come up – but it indicated that even when a conviction was expunged or subsequently withdrawn, it would still count for immigration purposes. So are you saying that Knapp v. Gonzales addressed that and said it does not? Or just who has the burden of showing that the conviction remains consequential for immigration purposes? It only talks about the burden that the Department of Homeland Security has as far as showing that it's still relevant for immigration purposes. And in that – in this case, what would that take? Would that just say, look at the statute and this expungement doesn't eliminate the conviction for statutory purposes? Well, Your Honor, essentially if that particular charge has been withdrawn, then there's no mention anywhere else in the conviction document as far as relationship to the crime being perpetrated against a child. And as a result, the section under which the petitioner has been charged as being removable would no longer apply. Right. But the conduct didn't change. Just the nature of the conviction changed. So there was a prior conviction, then there was a subsequent conviction with different language. And the question is whether the prior conviction, before it was expunged by whatever process, remains a conviction for purposes of the INA and for purposes of the immigration determination. And why does the statute not include the prior conviction? The – And maybe you could tell us what the statutory language is and why the expungement is effective to remove that. Or maybe we need to ask the government that question. I believe the government would be more apt to answer that. But as far as the statutory language goes, a conviction under the Section 101 of the Immigration and Nationality Act would mean it's a valid conviction where the record has been – all the possible appeals have been exhausted. All of the possible – any acts that the defendant could have taken have been exhausted. Whereas with this particular case, the conviction itself was withdrawn as if it never occurred. Well, what I was concerned with about this case was that for there to be a child endangerment conviction in California, one essential element is that the defendant have a custodial relationship with the child. Here, from what I could see, there was no custodial relationship whatsoever with the child. The girlfriend's son was in the back seat. This man was not in any way a putative father or anything else. He was just driving the girl and her child. If he were guilty of child endangerment, somebody in an intersection accident who had no custodial relationship to a child in another car would be perhaps endangering another child. So the only basis for there being a conviction in this case on child endangerment on the custodial relationship was his guilty plea. Right? Now, what you're telling me is that guilty plea was withdrawn with the approval of the district attorney at another count, simply drunk driving, was pleaded guilty to nunk pro-tunk. Do you have any cases besides this Natch case which tell us that once a nunk pro-tunk withdrawal of a guilty plea is entered in the state court records, it has no effect on the INA? I have been unable to find any other cases other than this Natch. Okay. And you're absolutely right, Your Honor. Thank you. In terms of that. I had the same impression, that he was innocent except he pleaded guilty to it. So I assumed it was a deal and it was worth it to plead guilty to something he didn't do for the sentence benefit. That's correct, Your Honor. But usually once somebody pleads and gets convicted of something, it really doesn't matter anymore. You don't look behind it. Well, in this case, Your Honor, there was a question in discussions with the district attorney as to whether this defendant understood what he, in fact, was pleading guilty to. And I believe that was in essence the reason the district attorney agreed to allow the defendant withdraw the guilty plea and plead to just drunk driving. Now, could you – I never fully understood the void for vagueness argument. Could you just summarize it orally? Yes, Your Honor. In essence, with child abuse in – We don't care about child abuse because he wasn't convicted of it. When a statute is void, it's imprecise, it's overbroad, and for the person who's on the street, if something is so vague – In this case, I think the way you briefed it, we're supposed to look at U.S. Code 1227 rather than California Code 273A. Is that correct? That's correct, Your Honor. So you're saying that child neglect in 1227 is vague. Yes, Your Honor. Or are you? It is vague because in terms of the legislative history, there is nowhere where Congress has indicated that it is to apply to all types of conduct against a child. And that section was enacted because of the need for domestic violence and abusers of spouses that were cohabitating together to be subject to immigration laws. One last question, Mr. Wong. Yes. Where in the record do we find anything that substantiates your statement that the child neglect – child endangerment count has been dropped? I have brought copies of the signed – It's not presently in the record. No, Your Honor. So are you asking us to take judicial notice of a court record? Yes, Your Honor. Is there any objection to that by the government? Yes, there is, Your Honor. Council should file a motion to reopen with the Department of Homeland Security with the Board of Immigration Appeals if they want that considered. Because this is an issue that has not been duly exhausted before coming here. Absolutely. And so all we have is one side of the story, Your Honor. I have informed the government, and that has occurred almost three weeks ago. And we have since that time been negotiating. Well, I suppose you're the government's physician, right? Sorry, Your Honor. I'm sorry. I spoke over Judge Payne. I don't think you heard him. The government is still objecting. Your negotiations, as sometimes happen, are fruitless. That was the case, Your Honor. I guess we could just grab the thing and remand and tell them to look at the document, take briefs on it, and decide whether it mattered. That would be fine, Your Honor. Thank you, Counsel. Thank you. By the way, have you filed anything at all in the record? The only thing that we have are your last statements. No, I haven't, Your Honor. Well, I would suggest that you might want to do you might want to evade yourself of 28J and file something so we have something in the record to look at, even over the objection of the government for the reasons stated, which I think are valid reasons. I will, Your Honor. Thank you. May it please the Court. My name is Mark Walters, and I represent the Attorney General of the United States. And I would like to start by saying that we were not ambushed with this. Mr. Wong did, in fact, notify the government when he said he did. We did have a problem with the facts not being delivered for about 10 days, but we still knew about this, and my co-counsel talked to him. And so we did have some negotiation about the issue. This is a little unusual. What usually happens in these non-proton cases is there really isn't much question that the person committed the crime, and it's immaterial to the county DA whether there's an immigration consequence. So the county DA stipulates to a non-proton order to eliminate the immigration consequence. This one's really unusual because, well, it looks like at least two of us looked at it and thought, gee, the guy didn't do it. He's innocent. And, of course, my immediate reaction was, well, if you can plead to a misdemeanor you didn't do instead of getting a much harsher sentence or maybe a felony prosecution for something you did do, good deal all around. So it's unusual because it looks like maybe he didn't do it. Well, Your Honor, of course, in plea bargaining, there is no final record that tells you looking behind the curtain precisely what the person did. No, you never know, but the non-proton order may help us. For example, in this record there's a lot more damning evidence than what – a lot more damning information than just DUI. If there's a kid in the courtroom there and he's real sick and he's not breathing and he gets asthma and he chokes up and I don't do a thing about it, I don't think I'm guilty of child neglect or child endangerment because it's not my kid. No, but if you have him in your car, Your Honor, we submit the result would be the opposite. No, not if he's just a passenger. Somebody else's kid. But if you're endangering the health and welfare of the child. But it's not – it's not endangering a child's health and welfare unless you have a custodial relationship. In the indication I gave you, a drunk driver goes into an intersection and causes a child in another car injury. He may be guilty of assault. He may be guilty of attempted murder. But he's not guilty of child endangerment because he has no custodial relationship with that child. I mean, to the extent it's a question of California law, are there any cases that you can inform us about that say one way or the other No. No, Your Honor. And I would defer to the Court's reading of that. We are dealing with the plea agreement here. And I would point out that on, I think, page 75 of the record, the Petitioner initialed that he knew this may make him removable. But when there's a plea agreement, at least when I was on the superior court, we asked for one more thing. We asked for a – some proof or a stipulation by counsel for the defendant that the crime had actually happened, that there was reasonable belief that the crime had actually happened. Was that taken here? Your Honor, I don't – I don't know. I don't think the record shows one way or another. But going to the conviction, the guilty plea being withdrawn, the statute here provides for record review. And that's not in the record. And, in fact, the way to get it in the record is to file a motion to reopen. The Petitioner should have done that within the time limits. In fact, the effort to get that criminal conviction undone should have occurred much earlier. He may be out of luck now, but finality dictates that at some point the Petitioner either obeys the orders or files a timely request for relief. You know? What you're saying is he didn't file a timely request to reopen to the DIA within 90 days. That's what I believe, Your Honor. But, of course, since he hasn't filed a motion yet, I mean, the other option is there is an option to get the government to stipulate to it. But in the NAAF case, I don't think the NAAF case changes the law that says that if your conviction is overturned for reasons that aren't related to a defect in either the substance of the order or the procedures that were used, the conviction still stands for immigration purposes. What Mr. Wong, Mr. Musubo will have to show in a motion to reopen is that this conviction was overturned not because of some rehabilitative measure and not because of a desire to avoid the immigration consequences of the crime or the plea. And while I can't predict what the Department of Homeland Security will do when confronted with a showing, I think that I can almost certainly say they won't agree to reopen a case if all it is is a rehabilitative or an immigration-based withdrawal of the plea. I guess we can reopen it for him. Well, Your Honor, I would argue that the court shouldn't do that and perhaps can't do that in this circumstance because of the statute saying that what you have is record review authority. In other words, you can look at what was properly put in the record. I don't think we can go outside the record. I think the motion to reopen proceeding initiated by Petitioner. The reason we usually the reason for that whole body of law and reopening that you've just described and described accurately is that usually it comes up in asylum and more frequently change of status cases where basically the alien has no right to be here and he's trying to change that after getting caught. So there are delays and there are limits on how much the alien can delay or make a subsequent change in his condition in order to stay here. The thing that makes this a little different is Nasubo wasn't an alien. He was a citizen. It's just that his citizenship was challengeable. Actually, Your Honor, he was a green card holder, which means he's an alien, but he had the right to reside here permanently. I'm sorry. You're right. I mixed it up with another of our cases. Understandable, Your Honor. He was for all for most intents and purposes when you get your green card, you're not going anywhere. One of the exceptions is committing a crime that is considered by Congress to be serious enough to have your status revoked. And in this case, that was the situation. If you do look at the ---- By the way, how long ago did Mr. Wong contact you with respect of the DA's action allowing the withdrawal of the guilty plea? There's a fax from Mr. Wong to our office dated January 7th. Of this year. That's right. It apparently was not delivered until sometime around, I want to say, January 21st, 2nd, or 3rd. It was just a clerical error. It sat by a machine under some other things. When it was discovered, it was immediately brought to one of my colleagues' attention. And I think, Mr. Wong, you can verify it. Did you hear from us around the 21st or 22nd? No, I did not. I actually called your colleague, Margaret O'Donnell, and that was the first time that I had any contact, despite having faxed an earlier fax. Help me with one other date or fact. Once an appeal is taken from the BIA to this court, can an alien move the BIA to reopen the case until we remand it to the BIA, or does it lose jurisdiction of the case by a proper appeal, even though the appeal is on another ground? No, you can file a motion to reopen, and the board can, in fact, reopen it or refuse to reopen. Even though the case is on appeal up here? That's correct. And if it had been filed while it's pending here and the board had reopened, we would have filed a motion suggesting the court lacked jurisdiction because there's no longer a final order of removal. Absolutely. But when things are strung out like this, we get to court today and we have a record. Does the 90-day rule still apply? Yes. All right. So if the act of withdrawing the guilty plea and allowing the plea to some lesser count and the non-protonic elimination of the conviction took place, let's say, January 2nd, 2009, you'd have 90 days in which to file a motion to reopen. That would be timely, right? Well, it's 90 days from the board's final order, and I forget the date of that in this case. But it couldn't be 90 days from the board's final order if the fact which allows the reopening hasn't taken place yet. Well, then our position, Your Honor, would be that there is no right to reopen under the statute that the time has run. What's left is what would be effectively a matter of prosecutorial discretion. And equitable tolling. Well, no equitable tolling, but there is a provision in the regulations to approach Homeland Security and ask, and that's in fact what we've been asked, to stipulate to a motion to reopen. And that doesn't mean we agree that it would be reopened, but we might agree that it should be reopened, but we might only agree that this needs to be heard. So they would ask for a stipulation. I can't speak for Homeland Security because they haven't been asked, and that's not my role. But I can predict, I can say that the odds are very slim that if they're presented with something that shows it was an immigration-based withdrawal of the plea or a rehabilitative withdrawal. What if Mr. Wong just convinced the DA, this man, as Judge Kleinfeld and I seem to agree, this man wasn't guilty of child endangerment. And we just woke up to that fact now, and the DA says you're absolutely right. Would that be immigration-connected? I can't predict. That's something that is so unusual that I think he had, if that is in fact the case, I think that he may want to present that to Homeland Security. But I don't think that we would take the position that it's timely. I mean, you have to do these things. You have rights, but you have a time limit in which to exercise them. There's something wrong there that they should be the ultimate judge. I know that we get cases where the case is essentially a claim that the department abused its discretion by not reopening. But as I understand the argument here, since the 90 days are passed, it's totally within their discretion, and as a practical matter, the discretion will be exercised to refuse to stipulate to an after-90-day motion, because the motive for taking a look at the conviction was the immigration consequence. Have I got that right? That's right, Your Honor. I believe that up to a point, everything is a matter of right, and after a while, it becomes a matter of prosecutorial discretion, especially if you've let the time go and haven't tried to get your conviction or your plea withdrawn. We haven't briefed this, and I am speaking from experience rather than from recent research, but that is my belief about what would and should happen here. Now, if, as Mr. Wong suggested, that regardless of his guilt or innocence of the particular crime of conviction, he didn't, you know, he signed it unknowingly, would that count as the sort of procedural defect that would cause that conviction, the substance of the conviction, not to count for immigration purposes? Your Honor, I'm not an expert on what gets a plea overturned or what gets a criminal conviction overturned, but having qualified that, I believe that if he wasn't informed, for example, of the rights that state law requires that he be informed of before he signs off on the plea agreement, that would be a procedural problem. I'm not going to speculate any further because I'm not a criminal lawyer, Your Honor, but substantive problems are ones that you could win direct appeals if you went up the court system in California or if it's a federal case, up the federal court system. The convictions that get withdrawn that the immigration statute allows Homeland Security to ignore are the ones where they say, well, if you don't use cocaine again for another two years, we will expunge your conviction. Or one where you come in and say, you know, I really, I thought leaving the country would be easy, but I've decided that I really want to stay here and I never would have pled to this if I had, you know, so would you please undo the ---- So just taking this procedurally, if I could take another minute here, if, in fact, the position of Mr. Nsubo was he didn't know what he was signing when he entered into the plea agreement, there was a procedural defect, and he files a motion to reopen untimely, and the BIA refuses to reopen, would we have jurisdiction of that or would we just say, well, we have no jurisdiction over a sua sponte, the BIA's determination not to sua sponte reopen? Well, if he's saying he didn't know what he signed when he signed the plea agreement, he should take that back to the state authorities, not to, I mean, the board is not going to look behind the state authorities' proceedings and try to assess what he knew and didn't know when he did it. The state authorities have already withdrawn the plea. So the predicate conviction is no longer there. Yeah, but now that's where the not case comes in. What we would want to know is why, and that's what we haven't received yet, why did they withdraw the plea agreement? There's something a little hard for me to put together here. It sounds like if the criminal did it, he was guilty, but he got one of those lenient sentences, probation for two years, and you'll get an expungement if you behave yourself. Then DHS will not act upon the conviction with respect to immigration status. But if the person was innocent and later persuades the DA to stipulate to vacating the conviction, DHS says, well, you would never have gone to the DA and fooled with it, except that it hurt your immigration status, so no relief for you. If I implied that, I didn't mean to, Your Honor. If what they're saying when they go back is, you know, I'm innocent, I didn't do this. And how can you tell? I mean, the way the person you say it to is the assistant DA in his office, and the assistant DA looks at it and says, you know, you're right. And then all the court gets is a stipulation. Yeah, that's why NAF is a problem for my clients, Your Honor, because it says the burden is on the government to show that there were some rehabilitative or immigration-based reasons for that. When, in fact, it might be a conversation in the hall that sets this up, and a judge who's frankly willing to sign off on the document, and the government's the only, the Federal Government is the only party in the immigration case that doesn't know what happened. So the NAF case is a problem for us, but the NAF case doesn't really affect this. It still leaves intact the fact that this conviction stands unless the withdrawal of the plea was, for some reason, other than rehabilitative or immigration purposes. And right now, the motive for the defendant in the criminal case is to avoid the immigration consequence. The motive for the prosecutor in the criminal case is that he's satisfied that the defendant was not guilty of it and pleaded mistakenly. Well, the direct answer is I have no idea, Your Honor. The secondary answer is that's why he needs to file a motion to reopen. We're sitting here speculating about what he's got in his pocket, and we're wondering what the agency reaction to it is, and I'm guessing, will Homeland Security agree, won't they? All of this is guesswork. And it's one reason why we have record review. This petition ought to be the board ought to be affirmed, and this petition denied, because persons of common intelligence would comprehend endangering the health of a child to equate to child neglect. And that's all the further we need to go on this record. What's complicated now are matters that the court really, I don't believe, should trouble itself. In my interpretation, somebody gets a speeding ticket in a school bus zone or school zone, and that would be a basis for conviction for child endangerment. Well, that's up to Congress. Again, Your Honor, if Congress says that's enough for you to be removable, and the agency prosecuted on that ground. But again, the other thing that we might find out here is that, no, we might find out, I'm speculating along with the court, no, he didn't have the kind of responsible relationship with this child to be guilty under this California statute. But what he actually did do made him guilty under a different statute, which is also a removable offense, which would have put us right back here. So the question and the reason reopening is so valuable here and making someone go through what seems maybe like extra hoops rather than have the court deal with it is that there's a whole lot more to the story than I know and the court knows, and we only have heard part of one side of the story. And in the plea give and take, it could be that what they'll decide is they're going to substitute something equally damaging as far as immigration consequences go. Roberts. Counsel, we've gone way over, so I ought to shut it down, even though it's really interesting. Unless the Court has further questions, I'm through, Your Honor. Thank you. Thank you, Counsel. The Subo v. McCasey is submitted. I suppose there's always the possibility we'll withdraw it from submission and request some further submission, but at this point it's submitted. Next is Jimenez v. Franklin.
judges: Kleinfeld, Bea, Ikuta